UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>　　Julianne Michelle Reeves,<br><br>　　　　　　　　　　Debtor. | <u>NOT FOR PUBLICATION</u><br><br>Case No. 22-10353 (MG)<br><br>Chapter 7 |
| Karl Reeves,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>Julianne Michelle Reeves and Joshua A. Douglass,<br><br>　　　　　　　　　　Defendants. | Adv. Pro. Case No. 23-01028 (MG) |

**CORRECTED MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION FOR DEFAULT JUDGMENT**

*A P P E A R A N C E S:*

Pryor Cashman LLP
*Attorneys for Plaintiff Karl Reeves*
7 Time Square
New York, New York 10036
By:　Richard Levy, Jr., Esq.
　　　Andrew S. Richmond, Esq.


**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

　　　　Pending before the Court is the motion (the "Motion," Adv. Pro. ECF Doc. # 30) by plaintiff Karl Reeves ("Plaintiff" or "Karl") seeking the entry of a default judgment against defendant Joshua A. Douglass ("Defendant" or "Douglass") on Counts 3 (fraud on the court) and 4 (New York Judiciary Law Section 487) of the complaint (the "Complaint," Adv. Pro. ECF Doc. # 1.)  In support of the Motion, Karl submitted a declaration by Richard Levy, Jr., Esq. (the

"Levy Declaration," Adv. Pro. ECF Doc. # 31.) Douglass was served but never responded to the Motion. The Court held a hearing on the Motion on December 4, 2023. Douglass did not appear.

For the reasons explained below, the Court **GRANTS** the Motion with respect to Count 3 and **DENIES** the Motion with respect to Count 4. While liability is clearly established, the Court needs to hold a damages inquest to determine the amount of recoverable damages. The Complaint alleges fraud on the court perpetrated by Julianne and Douglass, *jointly and severally*. Karl seeks to recover damages "not less than $95,549.31" for the attorneys' fees, costs, and expenses he incurred seeking to redress Douglass's and Julianne's misconduct. (Motion ¶ 17.) Karl submitted a list of invoices for legal fees of $62,307.70. (*See* Motion at Ex. H.) Karl will be required to demonstrate that all the legal fees and expenses he incurred, and any other damages he seeks to recover, are sufficiently connected to correcting the effects of the fraud he alleges. Whether any of these alleged damages are recoverable must await a damages inquest.

## I.    BACKGROUND

### A.    General Background

Julianne Reeves ("Julianne") and Karl were married on November 21, 2015. (Complaint ¶ 15.) They separated on January 23, 2017. (*Id.*) Julianna filed for divorce in New York on June 27, 2017. (*Id.* ¶ 16.) The still-ongoing divorce proceeding has been *very* contentious.

The genesis of this adversary proceeding is Julianne's Chapter 7 case, filed on March 22, 2022. (*See* ECF Doc. # 1.) She filed an amended petition on April 4, 2022. (ECF Doc. # 9.) Both the original and amended petitions listed her assets as $1 to 10 million and her liabilities as $500,000 to $1 million. (*See* ECF Doc. ## 1, 9.) Douglass was, and still is, her attorney-of-record in the Chapter 7 case. Douglass was (but apparently no longer is) Julianne's attorney in

2

the divorce proceeding. Both Julianne and Douglass signed her Chapter 7 petition. (*See* ECF Doc. # 1 at 7–8.) Salvatore LaMonica was appointed as interim Chapter 7 trustee and ultimately became the permanent trustee (the "Trustee"). On March 24, 2023, the Trustee filed a report stating that no distribution would be made in the case.

The Chapter 7 petition was not served on Karl. The mailing list of creditors attached to the petition does not include Karl, nor is Karl listed as a creditor (which he claims to be) in the schedules that were filed on May 5, 2022. (*See* Schedule A/B: Property ("Schedule A/B"), ECF Doc. # 12.) Schedule A/B lists Julianne as having a 25% ownership interest, valued at $50 million, in Consolidated Elevator Industries, Inc., Consolidated Electric Service Corp. and Consolidated Elevator Inc. of New York (collectively, the "Consolidated Elevator Entities"), companies that Karl asserts have always been his separate property. (Schedule A/B at 8; *see also* Complaint ¶¶ 41–47.) Schedule A/ B also lists Julianne as having retirement or pension accounts with the Consolidated Elevator Entities with no dollar value listed. (*See* Schedule A/B at 6.) Lastly, Schedule A/B lists Karl as owing Julianne reimbursement for childcare costs of $30,843.85. (*Id.* at 7.)

Despite the fact the petition and amended petition list the value of Julianne's assets as $1–10 million, Schedule A/B lists Julianne's "total personal property" as $151,210,044.83. Not bad for a Chapter 7 debtor! Schedule D lists no secured debts. (*See* ECF Doc. # 14.) Schedule E/F was *not* filed on the docket, but Julianne lists the total amount of unsecured claims against her on Official Form 106Sum as $693,816.21. (*See* ECF Doc. # 20.)

During the hearing, Karl's counsel stated that Karl only learned about Julianne's Chapter 7 case long after it was filed, during their divorce proceeding. He then saw that the bankruptcy schedules listed his separate property as in part hers as well. Karl makes allegations—supported

3

by evidence—that the Consolidated Elevator Entities and other listed property were his separate property before the marriage, and remained his separate property after. (*See* Complaint ¶ 14.)

On December 27, 2022, Karl's attorney sent Douglass a 6-page letter with an 11-page attachment identifying numerous alleged misrepresentations regarding Julianne's property listed in her bankruptcy schedules. The letter is attached as Exhibit A to the Complaint. (*See* Complaint at Ex. A.) The letter demanded that "[Douglass] and the Debtor promptly amend the schedules and any other previously filed documents to correct these matters on the record of the Bankruptcy Case" and "reserve[d] the right to seek appropriate relief from the Bankruptcy Court if corrective papers are not promptly filed." (*See id*.) The letter does *not* indicate that a copy was sent to the Chapter 7 Trustee. (*See generally id*.) No amendments to the schedules were made thereafter.

An entry on the main case docket on March 24, 2023 shows that the experienced Trustee, Salvatore LaMonica, filed a report of no distribution, which explained, in part, "that there is no property available for distribution from the estate over and above that exempted by law." An obvious question is why, if Julianne really has assets of over $150 million, no secured debts, and unsecured debts of $693,816.21, there would be no distribution to creditors. The record is silent whether Karl or his counsel communicated their position that Julianne's schedules misrepresented the makeup or value of her property to the Trustee, a question that should be addressed at the damages inquest.

B.    **Karl's Adversary Complaint**

On March 27, 2023, Karl filed the Complaint. Count 1, against Julianne alone, alleges that the domestic support obligations she owes to Karl are non-dischargeable under section 523(a)(5) of the Bankruptcy Code. (Complaint ¶¶ 28–32.) Count 2, also against Julianne alone,

4

alleges that Julianne's obligations to Karl are non-dischargeable under section 523(a)(15) of the Bankruptcy Code.[1] (*Id.* ¶¶ 33–37.) Count 3, against Julianne and Douglass, alleges that Julianne and Douglass are jointly and severally liable for fraud on the court. (*Id.* ¶¶ 38–76.) Count 4, against Douglass alone, seeks treble damages for the alleged violation of Section 487 of the New York Judiciary law, which provides that "any attorney or counselor who . . . is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment described therefor by the penal law of New York, forfeits to the party injured treble damages, to be recovered in a civil action." (*Id.* ¶¶ 77–80.)

As already stated, the Complaint attaches, among other things, the December 27, 2022 letter that Karl's counsel sent Douglass that catalogs, in detail, the numerous misrepresentations allegedly made in Julianne's schedules in which she claimed property valued at approximately $150 million. (*See* Complaint at Ex. A.)

The Complaint pleads the alleged misrepresentations in detail.

### C.    Douglass' Default

The Motion arises from Douglass' default in responding to the Complaint. While Julianne also failed to respond to the Complaint, a default judgment has not yet been sought against her. As already mentioned, the Motion seeks a default judgment against Douglass on Counts 3 and 4. The operative facts and circumstances are detailed in the Complaint and the Levy Declaration that was filed in support of the Motion.

---

[1]    Karl's attorney acknowledged during the hearing on December 4, 2023 that the matrimonial court has so far not entered an order or judgment in favor of Karl for amounts that would be non-dischargeable under either section 523(a)(5) or 523(a)(15).

On March 28, 2023, the Clerk of the Court (the "Clerk") issued the original summons, and Douglass failed to answer or otherwise respond to the Complaint within the prescribed time. (Motion ¶¶ 4–5.) Consequently, on May 8, 2023, the Clerk entered a certificate of default against Douglass. (*Id.* ¶ 5.)

Upon learning a short time later that a separate mailing sent to Douglass was returned as undeliverable, Karl's counsel elected to seek a second summons ("Second Summons") which was issued on July 12, 2023. The Second Summons and Complaint were served on Douglass. (*Id.* ¶ 6.)

Douglass failed to answer or otherwise respond to the Complaint within 30 days. (*Id.* ¶¶ 7–8.) He filed a letter on August 23, 2023 (Adv. Pro. ECF Doc. # 22) requesting an extension of time to answer the Complaint by August 28, 2023. (*Id.*; *see also* Motion ¶ 9.) The Court did not respond to the letter request, but Douglass did not file a responsive pleading on or before August 28, 2023. Consequently, on August 28, 2023, the Clerk of the Court entered a second certificate of default against Douglass. (Adv. Pro. ECF Doc. # 24; Motion ¶ 10.)

During a video status conference on August 29, 2023, Douglass appeared and verbally acknowledged that he had been served with the Second Summons and the Complaint and had not filed an answer to the Complaint.[2] (Motion ¶ 11.)

### D.   Motion for Default Judgment

The Motion seeks entry of a default judgment against Douglass alone with respect to the fraud on court claim in Count 3 and for the treble damages claim with respect to the New York Judiciary Act in Count 4.

---

[2] Because of misconduct by Douglass during the August 29, 2023 conference, the Court imposed a $100 monetary sanction against Douglass (*see* Adv. Pro. ECF Doc. # 25), which he paid.

6

The Complaint alleges fraud on the court perpetrated by Julianne and Douglass, jointly and severally. Karl seeks to recover damages for the attorneys' fees, costs, and expenses he incurred seeking to redress misconduct by Douglass and Julianne. (*Id*. ¶ 15.) The Motion alleges that the damages are not less than $95,549.31. (*Id*.) Exhibit H to the Levy Declaration in Support of the Motion (Adv. Pro. ECF Doc. # 31 at Ex. H) lists invoices for legal fees to Karl totaling $62,307.70. Whether any or all of those fees are recoverable must await a damages inquest.

Karl maintains that the Complaint makes all the necessary allegations of each count for Douglass' liability for false statements, preparation and/or facilitation of the filing of falsehoods, deliberate misconduct and deceit. (Motion ¶ 21.)

Karl argues that treble damages are authorized by Section 487 of the New York Judiciary Law ("Section 487") for such conduct and should be awarded here. (*Id*.) Section 487 of the New York Judiciary Law provides, in relevant part:

> An attorney or counselor who:
> 1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;
> * * *
> Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. JUD. L. § 487.

Karl maintains that Section 487 covers both actual and attempted acts of deceit by a New York attorney during litigation. (*Id*. ¶ 31.) Moreover, Karl alleges, the statute reaches both completed and attempted but uncompleted deceits by the attorney. (*Id*. ¶ 32.) Furthermore, Karl's counsel contends that Section 487 claims are routinely upheld when brought against an adversary's counsel. (*Id*. (citing *Trepel v. Dippold*, 2005 WL 1107010, at *4 (S.D.N.Y. May 9, 2005)).)

7

Karl argues that there is no obstacle to this Court granting relief under Section 487 on the facts and circumstances presented here. (*Id.* ¶ 33.) But, as explained below, the Court concludes that Section 487 only imposes liability in connection with misconduct by an attorney in state court proceedings, not for alleged misconduct in federal court. Therefore, treble damages based on Douglass's misconduct in the bankruptcy court are not recoverable.

## II. LEGAL STANDARD

### A. Entry of a Default Judgment under Bankruptcy Rule 7055

This Court has set forth the legal standard for an entry of a default judgment:

> Rule 55 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7055, "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment." *Id.*
>
> A default generally is "an admission of all well-pleaded allegations against the defaulting party." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). However, "allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Accordingly, the trial court "must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Ascertaining damages involves two steps: (1) "determining the proper rule for calculating damages on such a claim," and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." *Credit Lyonnais*, 183 F.3d at 155.

*Feltman v. TS Emp't Serv., Inc.* (*In re TS Emp't, Inc.*), 602 B.R. 840, 844–45 (Bankr. S.D.N.Y. 2019).

In *Exec. Sounding Bd. Assoc. v. Advanced Mach. & Engineering Co.* (*In re Oldco M. Corp.*), 484 B.R. 598, 600 (Bankr. S.D.N.Y. 2012), this Court entered a default judgment against

8

a properly served defendant who failed to respond to the complaint, where the plaintiff filed (i) a proof of service of the summons and complaint on the defendant, (ii) a proof of service of a second summons and complaint on the defendant; (iii) a proof of service of the certificate of default on the defendant; and (iv) a proof of service of the motion for the entry of a default judgment and supporting declaration on the defendant.

The summons issued by the Court in *Oldco M. Corp.,* and in this and all other cases, includes the following language: "IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT." The reasoning underlying *Oldco M. Corp.* was that the consent language in the summons satisfied the standards for entry of a final judgment by the bankruptcy court even if the bankruptcy court could not otherwise enter a final judgment on related-to or so-called *Stern* claims.[3] *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015); *see also, e.g., In re Fyre Festival LLC*, 611 B.R. 735, 740 (Bankr. S.D.N.Y. 2020) (collecting cases).

### III.    DISCUSSION

With respect to Count 3, Karl is entitled to entry of a default judgment because the Complaint alleged all the essential elements of the claim for fraud upon the court and no response to the Complaint was filed. A damages inquest will be necessary to determine the amount of a judgment that should be entered.

With respect to Count 4, Karl cannot recover under Section 487 because Section 487 only extends to attorney misconduct in connection with state court actions.

---

[3]    It is unnecessary to address the issue whether the fraud on the court claim should be considered a *Stern* claim or an "arising-in" claim for which the Court could enter final judgment if the claim was fully litigated.

9

### A.     Fraud on the Court (Count 3)

A ''fraud on the court'' encompasses conduct that prevents the court from fulfilling its duty of impartially deciding cases. *In re Clinton Street Food Corp.*, 254 B.R. 523, 532 (Bankr. S.D.N.Y. 2000). Fraud on the court is "fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir.1988). Rather than being limited to injury to an individual litigant, fraud on the court embraces "that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases presented for adjudication." *In re Food Management Group, LLC*, 380 B.R. 667, 714 (Bankr. S.D.N.Y. 2008) (citing *Kupferman v. Consol. Research and Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972)).

Successfully alleging fraud on the court requires (1) a misrepresentation to the court by the defendant; (2) a description of the impact the misrepresentation had on proceedings before the court; (3) a lack of an opportunity to discover the misrepresentation and either bring it to the court's attention or bring an appropriate corrective proceeding; and (4) the benefit the defendant derived from the misrepresentation. *In re Ticketplanet.com,* 313 B.R. 46, 64 (Bankr. S.D.N.Y. 2004) (citing *Leber-Krebs, Inc. v. Capitol Records,* 779 F.2d 895, 899–900 (2d Cir. 1985)).

Because "fraud upon the court" is a variation of fraud, a plaintiff must allege it with the level of particularity required under Federal Rule of Civil Procedure 9(b). *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) (granting motion for judgment in favor of defendant as to plaintiff's fraud upon the court

10

allegations because the plaintiff did not plead fraud with sufficient particularity); *Bryant v. Silverman*, 2017 WL 887043 at *2 (S.D.N.Y. Mar. 6, 2017) (applying heightened pleading standards of Rule 9(b) to fraud on court claim). To satisfy Rule 9(b), a complaint alleging fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, the Complaint alleged all the essential elements of the claim for fraud on the court. Julianne's Schedules misrepresent a substantial portion of Karl's specifically identified separate property as property of the estate. The December 27, 2022 letter from Karl's counsel to Douglas attached supporting documents showing the falsity of the information included in the Schedules filed with this Court. (*See* Complaint at Ex. A.) Because Douglass defaulted, the Court will assume the truth of the allegations regarding material misstatements contained in the Schedules.

First, Douglass made numerous material misstatements to the Court. Schedule A/B misrepresents Julianne's total personal property totaling more than $151 million, mostly comprised of Karl's separate property—particularly $50 million as the alleged value of Julianne's non-existent 25% interest in Karl's three companies. (*See generally* Schedule A/B.) The New York Supreme Court ("State Court") had addressed the ownership question and rejected any notion that Julianne had any such interest. (Complaint ¶ 47.) Specifically, the State Court had determined in its December 19, 2018 order that Karl's ownership interests in those properties were not subject to equitable distribution. (*Id*.) Other misrepresentations are also alleged with particularity. (*See* Complaint ¶¶ 51–58.)

Second, the misrepresentations contained in the Schedules had a material impact on the Chapter 7 petition in this Court. This Court was unable to determine the assets and liabilities of the debtor, Julianne, because of Defendant's fraudulent statements, wasting scarce judicial resources as well as the bankruptcy estate and Karl's financial resources.

Third, Karl had no opportunity to discover the fraud within a reasonable time, as Karl alleged that he was unaware of the Chapter 7 petition until much later in the divorce proceeding. As such, there was no prior opportunity to bring any corrective proceeding in this Court.

Fourth, it appears from the uncontested allegations of the Complaint, deemed true on this default judgment motion, that Douglass and Julianne derived (or certainly attempted to derive) benefits from the misrepresentations.

The Court finds and concludes that the Complaint successfully pleaded a claim for fraud on the court against Douglass. Accordingly, the Court **GRANTS** the Motion with respect to that claim.

B.    **New York Judiciary Law Section 487 (Count 4)**

To prevail under Section 487, Karl must establish that an attorney is "guilty of any deceit of collusion, or consents to any deceits or collusion, with intent to deceive the court or any party." N.Y. JUD. L. § 487. The purpose of Section 487 is to allow New York courts to supervise the conduct of attorneys admitted before their bar. *All. Network, LLC v. Sidley Austin LLP*, 987 N.Y.S.2d 794, 807 (N.Y. Sup. Ct. 2014) (emphasis added) (citing *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978)). Most courts have found that "[t]he reach of Section 487 extends only to misconduct by attorneys in connection with proceedings before New York courts." (*Id.*) In *In re Linder v. Am. Express Corp.*, No. 06 Civ. 3834(JGK)(THK), 2009 WL 54493 (S.D.N.Y. Jan. 8, 2009), the court dismissed a Section 487 claim because the alleged

12

deceitful conduct occurred in an ongoing federal action, rather than in state court. The court explained that "[t]his statute does not provide a basis for sanctioning a party or attorney for misconduct in an ongoing federal action. Rather, it allows for a state law claim for conduct that occurred in a prior state court action." *Id.* at *1; *see also Kaye Scholer LLP v. CNA Holdings, Inc.*, No. 08 CIV. 5547 (NRB), 2010 WL 1779917 (S.D.N.Y. Apr. 28, 2010) (dismissing a Section 487 claim on the basis that the conduct did not occur before a New York state court).

Here, Karl's Section 487 claim is rooted in the alleged fraudulent conduct that occurred during Julianne's bankruptcy proceeding before this Court. Since a Section 487 claim extends only to attorney misconduct before New York state courts, Karl cannot assert such a claim here.

Karl's counsel relies on *Amalfitano v. Rosenberg*, 572 F.3d 91 (2d Cir. 2009) (per curiam), *aff'g* 428 F. Supp. 2d 196 (S.D.N.Y. 2006). But the case is clearly inapposite, as it involved alleged misconduct in prior state court litigation. *See Amalfitano v. Rosenberg*, 533 F.3d 117, 121 (2d Cir. 2008), *certified question accepted*, 11 N.Y.3d 8 (2008), *certified question answered*, 12 N.Y.3d 8 (2009).

Karl alleged that Douglass committed fraud on the court during Julianne's bankruptcy proceeding before this Court, a federal court. "[T]he reach of Section 487 extends only to misconduct by attorneys in connection with proceedings before New York courts." *Sidley Austin LLP*, 987 N.Y.S.2d at 807 (citing *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978)). Therefore, Karl cannot successfully assert a Section 487 claim here. Accordingly, the Court denies the Motion with respect to that claim.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion with respect to Count 3 and **DENIES** the Motion with respect to Count 4 of the Complaint. The Court concludes that the

13

record establishes that Douglass committed fraud on the court. To determine the amount of damages that are recoverable on Count 3, the Court will schedule an inquest.

A separate order will be entered setting a scheduling conference for a damages inquest.

**IT IS SO ORDERED.**

Dated:   December 12, 2023
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge