**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                            :      <u>NOT FOR PUBLICATION</u>
                                                  :
                                                  :      Chapter 7
    Julianne Michelle Reeves,              :
                                                  :      Case No. 22-10353 (MG)
                                                  :
                                    Debtor.     :
------------------------------------------------------------x
                                                  :
Karl Reeves,                                      :
                                                  :
                                                  :
                            Plaintiff,     :
                                                  :      Adv. Proc. No. 23-01028 (MG)
    - against -                               :
                                                  :
Julianne Michelle Reeves and Joshua A. Douglass,  :
                                                  :
                           Defendants.    :
------------------------------------------------------------x

<u>**MEMORANDUM OPINION AND ORDER AWARDING DAMAGES TO PLAINTIFF**</u>

***A P P E A R A N C E S:***

PRYOR CASHMAN LLP
*Counsel for Karl Reeves*
7 Times Square
New York, NY 10036-6569
By:    Richard Levy, Esq.
          Andrew S. Richmond, Esq.
          Joshua Weigensberg, Esq.

Joshua A. Douglass, Esq.
*Pro se*
122 Rte. 44
PO Box 481
Millerton, NY 12546

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

The Court held a damages inquest ("Inquest") on April 1, 2024, to determine the amount of recoverable damages to be awarded to plaintiff Karl Reeves ("Plaintiff" or "Karl") against defendant Joshua A. Douglass, Esq. ("Defendant" or "Douglass") on Count 3 (fraud on the court) of an adversary complaint ("Complaint," ECF Doc. # 1)[1] filed in the chapter 7 bankruptcy case of Julianne Reeves ("Julianne") filed on March 22, 2022. On December 12, 2023, the Court entered a default judgment against Douglass after he failed to respond to the Complaint. *See Reeves v. Reeves (In re Reeves)*, No. 23-01028, 2023 WL 8607128 (Bankr. S.D.N.Y. Dec. 12, 2023). The *Reeves* Opinion granted in part a motion for default judgment filed by Karl ("Default Judgment Motion," ECF Doc. # 30) as to Count 3 (fraud on the court) and denied the Default Judgment Motion as to Count 4 (New York Judiciary Law Section 487).[2] An Order Scheduling Damages Inquest, and setting deadlines for submitting evidence and briefs, was entered on February 29, 2024. (ECF Doc. # 49.) The Inquest was held on April 1, 2024. Plaintiff was represented at the Inquest by counsel; Douglass appeared on his own behalf.

## I.    BACKGROUND

### A. Julianne's Bankruptcy Schedules

The gist of the fraud on this Court (and on Karl and all of Julianne's creditors) stems from Douglass' representation of Julianne in a protracted and contentious, still on-going, New York state matrimonial court divorce proceeding between Karl and Julianne, and Douglass' representation of Julianne in her chapter 7 bankruptcy case in this Court. Douglass prepared

---

[1]    Unless otherwise stated, citations to ECF document numbers will be to adversary proceeding number 23-01028 (MG).

[2]    Counts 1 and 2 name only Julianne as a defendant and address nondischargeability of certain divorce- and support-related obligations pursuant to Section 523(a)(5) and (15) of the Bankruptcy Code.

2

Julianne's bankruptcy petition and schedules. Schedules A/B listed Julianne's property as totaling *over $150 million*. (*See* Case No. 22-10353, Schedule A/B, ECF Doc. # 12, at 10 of 10 ("Total of all property on Schedule A/B $151,210,044.83").) However, Julianne's purported "property"—primarily consisting of Karl's ownership interests in a family business—had already been determined by the matrimonial court to be Karl's separate property, acquired before he and Julianne were married, and not subject to equitable distribution. (Complaint ¶ 47.) Julianne's Schedules A/B also misrepresent other interests in property, including interest in a 401(k) plan and IRA account relating to the same family business, as well as childcare reimbursement support obligations owed to her from Karl. (*See* Case No. 22-10353, Schedule A/B, ECF Doc. #12, at 6–7; *see also* Complaint ¶¶ 48–50.) Douglass also did not list Karl as a creditor (in connection with his potential claim related to Karl and Julianne's divorce and custody proceeding). (Complaint ¶¶ 13, 23.) Because Douglass defaulted, the Court assumes the truth of the well-pleaded allegations regarding material misstatements outlined in the Complaint. *See Reeves*, 2023 WL 8607128, at *6.

B.  **Karl's Attempts to Correct Julianne's Misrepresentations**

When Karl learned about Julianne's chapter 7 bankruptcy case, he consulted with his lawyers at Pryor Cashman LLP ("PCLLP"). His counsel investigated, reviewed the bankruptcy court docket and identified the gross misrepresentations about Julianne's property, which was really Karl's separate property. PCLLP then prepared a letter to Douglass demanding corrections to Julianne's bankruptcy filings ("Letter Demanding Corrections") and communicated with the chapter 7 trustee, Salvatore LaMonica ("Chapter 7 Trustee"), about the misrepresentations regarding Julianne's property. (Complaint ¶ 52 n.3.) On December 27, 2022, Levy sent a letter to Douglass at the email address designated by Douglass in Julianne's

3

bankruptcy case explaining the numerous material misrepresentations regarding Julianne's property and demanding corrections to Julianne's schedules. (*See* Case No. 22-10353, ECF Doc. 33, Complaint ¶ 52, Ex. A.) Douglass did not respond to the Letter Demanding Corrections. (Complaint ¶ 54.) On January 10, 2023, PCLLP sent a follow-up electronic communication to Douglass to the same email address referencing the Letter Demanding Corrections and requesting a response. (*Id.* ¶ 55, Ex. N.) Douglass did not respond. (*Id.* ¶ 56.)[3] On January 12, 2023, PCLLP again attempted to obtain a response from Douglass by sending him a copy of the Letter Demanding Corrections to an alternate email and office address listed with the Office of Courts Administration of the State of New York. (*Id.* ¶¶ 57, 58, Ex. P, Q.)

Douglass never responded to any of Karl's (through PCLLP) demands for Douglass to correct Julianne's schedules. (*Id.* ¶¶ 54, 63, 65.) Douglass did not correct Julianne's schedules. (*Id.* ¶ 63.)[4] The Complaint was then filed.[5]

**C.  Karl's Damages**

In support of his request for damages, Karl's counsel, PCLLP, submitted a Declaration and accompanying exhibits by Richard Levy, Esq. ("Levy"), a partner of PCLLP ("Levy Declaration," ECF Doc. # 51), which were all admitted into evidence at the Inquest without objection. The Levy Declaration recites Douglass' misconduct that resulted in damages to Karl,

---

[3]    Following the January 10, 2023, email communication, PCLLP received an email from an individual purporting to be Douglass' former law clerk, indicating that Douglass was no longer Julianne's counsel and that the law clerk maintains Douglass' email address. (Complaint ¶ 56, Ex. O.) The email address is the address reflected on the Court's docket at the time. (*Id.* ¶ 55, Case No. 22-10353, ECF Doc. #3.) On January 19, 2023, PCLLP received additional email correspondence from and individual named Charles Edward Lincoln from the same email address indicating that he and Douglass work together under a "business management agreement." (*Id.* ¶ 59, Ex. R.)

[4]    On March 24, 2023, the Chapter 7 Trustee issued a report of "No Distribution" in Julianne's chapter 7 case. (Case No. 22-10353, "Chapter 7 Trustee's Report of No Distribution," entry dated March 24, 2023.) Official Form 106 Sum lists Julianne's liabilities as $693,816.21. (Case No. 22-10353, ECF Doc. # 20.) For a chapter 7 debtor who (falsely) listed her assets as over $150 million, her creditors received no distribution.

[5]    Douglass did not respond to Complaint nor the Default Judgment Motion. *Reeves*, 2023 WL 8607128, at *1. He also did not appear at the hearing on the Default Judgment Motion. *Id.*

4

consisting of Karl's legal fees and expenses due to PCLLP.[6] Exhibits D and E to the Levy Declaration provide two PCLLP invoices in the total amount of $95,028.36 in legal fees for 143.9 hours of work, and $2,520.95 for expenses, including a 15% "courtesy fee discount." (*See* "Invoices," ECF Doc. ## 51–4 and 51–5; Complaint ¶ 9.)

The work performed by PCLLP consisted of the following:

- reviewing Julianne's Chapter 7 bankruptcy petition, schedules, and other filings;
- preparing communications to Douglass requesting that he correct, or cause to be corrected, the untruthful statements in the schedules regarding property owned by Karl in which Julianne lacked any ownership interest;
- preparing and filing the Complaint, and conducting the adversary proceeding; and
- preparing the Default motion and accompanying Declaration.

(Levy Declaration ¶ 10.)

Levy supplemented his Declaration by his testimony at the Inquest. Douglass cross-examined Levy during the Inquest,[7] but Douglass did not testify or submit any other evidence.[8]

## II.   LEGAL STANDARD

Courts have discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44–45 (1991). In exercising its discretion, courts in the Second Circuit may consider factors such as "(i) whether the misconduct

---

[6] Whether Karl suffered any other compensable damages other than legal fees was not an issue in the Inquest as Karl sought no other damages.

[7] During Douglass' cross-examination of Levy, Douglass repeatedly engaged in improper conduct despite numerous warnings by the Court. Based on Douglass' repeated acts of misconduct during the cross-examination, the Court imposed monetary sanctions on Douglass 10 separate times, each time imposing sanctions of $100, cumulatively totaling $1,000. A separate order imposing sanctions will be entered after a transcript of the Inquest is prepared.

[8] Douglass filed a document styled "Declaration in Opposition to Motion for Damages Inquest Against Defendant Joshua A. Douglass" (the "Opposition," ECF Doc. # 54). Upon review of the Opposition, it is not a declaration; rather, it is a one-page "brief" citing three cases inapposite to the Court's Inquest determination.

5

was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the injured party; (iii) whether there was a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 394 (S.D.N.Y. 2010) (applying factors to determine whether party perpetrated fraud on the court) (citations omitted). *See also Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 444 (S.D.N.Y. 2002) (same) (citation omitted).

Compensable damages for fraud on the court may include reimbursement for attorneys' fees. *Chambers*, 501 U.S. at 46 ("[I]f a court finds that fraud has been practiced upon it . . . it may assess attorney's fees against the responsible party.") (internal quotation marks and citations omitted). *See also Passlogix*, 708 F. Supp. 2d at 394 ("When faced with a fraud on the court, the available sanctions . . . range from . . . the imposition of attorney's fees occasioned by the conduct in questions, and finally to the entry of judgment against the offending party.") (internal quotation marks and citations omitted); *In re Parklex Assocs.*, 435 B.R. 195, 209 (Bankr. S.D.N.Y. 2010) ("The bankruptcy court may order disgorgement of fees, award costs, or impose other penalties when an attorney is found to have committed a fraud on the court." (citing 3 COLLIER ON BANKRUPTCY ¶ 329.04 [1][b])).

If the Court finds that an award of fees and costs is the appropriate sanction, courts in the Second Circuit typically apply a "lodestar" analysis to arrive at a "presumptively reasonable fee." *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Id.* (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). In conducting the lodestar analysis, the Court may consider factors

6

originally set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) (the "*Johnson*" factors). *Arbor Hill*, 522 F.3d at 190.[9] *See also Lilly v. City of New York*, 934 F.3d 222, 232–233 (2d Cir. 2019) ("[T]he twelve *Johnson* factors remain important tools for helping district courts calculate the lodestar . . . .").

The plaintiff bears the burden of "submitting evidence supporting the hours worked and rates claimed." *See Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). If the amount of the fees requested are greater than that required, courts should reduce the fees accordingly. *See HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 722 (S.D.N.Y. 2018) (citations omitted). In its *Reeves* Opinion, the Court previewed Karl's burden of proof for an award of damages at the Inquest, stating that "Karl will be required to demonstrate that all legal fees and expenses he incurred, and any other damages he seeks to recover, are sufficiently connected to correcting the effects of the fraud he alleges." *Reeves*, 2023 WL 8607128, at *1.

### III. DISCUSSION

Upon application of the factors courts consider when determining sanctions for fraud on the court, the Court finds that an award of fees and costs incurred by Karl as a result of Douglass' fraud is appropriate for the reasons stated below. *See Passlogix*, 708 F. Supp. 2d at 394.

---

[9] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717–19).

7

First, Douglass was aware that the information submitted on Julianne's Schedules was false, and he failed to correct or amend her Schedules. (Complaint ¶¶ 14, 63, 67, 69.) *See Passlogix*, 708 F. Supp. 2d at 406 ("[B]ad faith—that is, knowing that it was false.") (citation omitted); *Scholastic,* 221 F. Supp. 2d at 444 (awarding fees and costs where party failed to correct fraudulent submissions, even after evidence of falsity).

Second, the Court finds a pattern of misbehavior by Douglass rather than an isolated incident, because (1) he filed Julianne's bankruptcy schedules with statements directly contrary to findings made in Karl and Julianne's divorce action (and Douglass is Julianne's counsel in that action); (2) Douglass failed to list Karl as a creditor, depriving him of notice of Julianne's bankruptcy case; (3) Douglass was confronted by the misrepresentations he made in Julianne's schedules by the Letter Demanding Corrections and multiple subsequent communications; and (4) Douglass failed to respond to the Letter Demanding Corrections, numerous subsequent attempts to obtain a response as catalogued in the Complaint, answer the Complaint, respond to the Default Judgment Motion, or amend Julianne's schedules. (*See* Complaint ¶¶ 13, 23, 47, 50, 52–58; *see also Reeves*, 2023 WL 8607128, at *1.)

Third, Douglass' conduct "had a material impact on the Chapter 7 petition in this Court." *See Reeves*, 2023 WL 8607128, at *6. *See also Scholastic*, 221 F. Supp. 2d at 444 (awarding legal fees and expenses incurred due to submission of fraudulent documents).

Finally, given Douglass' failure to correct the record despite repeated evidence of misrepresentation, the Court is not confident that any future representations made by Douglass, to the extent this adversary proceeding advances, would not recur.

Thus, the Court finds that an award of fees and costs incurred by Karl is an appropriate remedy. Once the Court determines an appropriate sanction, the Court must conduct a "lodestar"

8

analysis to determine a presumptively reasonable fee—the product of the reasonable hourly rate and reasonable number of hours required by the case. *See Millea*, 658 F.3d at 166 (citations omitted).

### A.    Reasonable Hourly Rate

The rates sought by Plaintiff are the rates PCLLP normally charges its clients. (Declaration ¶ 15; *see Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) ("[T]he range of rates that a plaintiff's counsel actually charges their clients . . . is obviously strong evidence of what the market will bear.") (citations omitted).) Further, the rates are "similar to the prevailing rates of other similar law firms in the New York City area." (Declaration ¶ 12; *see HTV Indus.*, 317 F. Supp. 3d at 720 ("An attorney's hourly rate is considered reasonable when it is in line with those rates prevailing in the community . . . .") (internal quotation marks and citations omitted).)

Further, the Levy Declaration references the experience of each relevant attorney and paralegal with PCLLP's Bankruptcy, Reorganization & Creditor's Rights Group, the number of years each attorney has been in practice, and the customary hourly rate ordinarily charged to the firm's clients. (Levy Declaration ¶¶ 11–15). Thus, *Johnson* factors three (level of skill), five (customary hourly rate), and nine (experience, reputation, and ability of the attorneys) weigh in favor of PCLLP's request. Lastly, the Court considers awards in similar cases, and finds that an examination of those awards reflects an hourly rate similar to that of PCLLP (*Johnson* factor twelve).[10] Based upon the evidence submitted, as well as the Court's familiarity with prevailing rates, the Court finds that the hourly rates charged to Karl by PCLLP are reasonable.

---

[10]    A mechanical application of each *Johnson* factor is not necessary in this case. However, use of the *Johnson* factors assists the Court's determination. *See Lilly*, 934 F.3d at 233 (acknowledging that a strict application of the *Johnson* factors is too imprecise; affirming permissive use of the *Johnson* factors) (citing *Hensley,* 461 U.S. at 434 n.9).

**B.     Hours Reasonably Expended**

Here, the Court's determination is complicated by the way PCLLP structured and submitted its Invoices. The Court granted a default judgment only as to Count 3 (fraud on the court) and denied the Default Judgment Motion as to Count 4 (New York Judiciary Section 487). *Reeves*, 2023 WL 8607128, at *8. The Court can only award the amount of damages that are reasonably related to Count 3. *Id.* at 1; *see also Balestriere PLLC v. CMA Trading, Inc.*, No. 11-9459, 2014 WL 7404068, at *4 (S.D.N.Y. Dec. 31, 2014) ("Courts are to make a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.") (internal quotation marks and citations omitted).

PCLLP submitted hours for two separate billing time periods: December 5, 2022–July 31, 2023, and August 14, 2023–October 12, 2023. (Levy Declaration, Exs. D and E.) The Invoices include the dates of work, hours expended, and a summary of work performed for its attorneys and one paralegal, as well as related expenses. However, PCLLP made no effort to delineate work done in connection with Count 3, and the work related to the other Counts, which were either not before the Court on the Default Judgment Motion (Counts 1 and 2) or were denied (Count 4). Levy acknowledged this fact during the Court's questions to Levy during his trial testimony. The Invoices also reflect "block billing," which is lumping multiple billing tasks in a limited number of billing entries. The Court is left with the task of separating the "compensable work" (relating to Count 3) and "non-compensable work" relating to the other Counts in the Complaint.

1. <u>Extraneous Entries</u>

Upon close inspection of PCLLP's time entries, the Court finds that the following entries (the "Extraneous Entries") do not sufficiently relate to Count 3:

10

| EXHIBIT D | | | |
|---|---|---|---|
| 1.20.23 | Research regarding and work on nondischargeability complaint (.8); email correspondences with Michael Belmont (divorce counsel) re: same (.2) | 1.00 | $527.00 |
| 3.1.23 | Research regarding custody and support payment obligations in NY Supreme Court orders; prepared internal document re: same | 1.00 | $527.00 |
| 3.21.23 | Email with K. Reeves re: status; continue work re: revised complaint adding Judiciary Law § 487 claim vs. counsel | 1.50 | $1,351.50 |
| 8.30.23 | Multiple email correspondence re: motion to dismiss and discussions with Julianne Reeves | .80 | $462.40 |
| 9.5.23 | Call re: R. Levy in preparation for settlement discussion with Julianne Reeves; Zoom settlement call with R. Levy and Julianne Reeves; email correspondence with K. Reeves re: same | 2.40 | $1,387.20 |
| 9.5.23 | Telephone call with A. Richmond re: preparation for J. Reeves zoom meeting; zoom meeting with A. Richmond and J. Reeves; telephone call follow-up with A. Richmond re same | 1.30 | $1,171.30 |

11

| 9.7.23 | Zoom call with K. Reeves, E. Nathanson and R. Levy re: status of settlement discussions and next steps | .50 | $289.00 |
|---|---|---|---|
| 9.7.23 | Telephone conference with A. Richmond, K. Reeves, E. Nathanson re: report on call with Julianne, strategy and next steps | .50 | $450.50 |
| **TOTAL** | | | **$6,165.90** |

The Court finds that the Extraneous Entries relate to work performed with respect to Counts 1 and 2 of the Complaint (divorce- and support-related debts) or were related to settlement negotiations with Julianne, against whom a default judgment was not sought. Thus, the Court will reduce the award of damages to Karl by **$6,165.90**.

2. Remaining Time Entries

The Court finds that most of PCLLP's remaining time entries are connected to the work required to address the misstatements in the Debtor's schedules; attempts to effectuate service of the Complaint on Douglass; the drafting, filing, the initial prosecution of the adversary proceeding; and the preparation of the Default Judgment Motion and related documents. However, the billing records do not allocate time devoted to those tasks in furtherance of Count 3 in particular. Plaintiff has the burden of proof as to damages—here, it is PCLLP's burden to show the reasonable connection of the work billed to correcting the effects of the fraud alleged. *See Balestriere*, 2014 WL 7404068, at *4 ("[T]he burden is on the plaintiff to keep and present records from which the court may determine the nature of the work done . . . .") (internal quotation marks and citations omitted); *see also Marisol A.*, 111 F. Supp. 2d at 385–86 (stating that the court should reduce award if documentation is inadequate) (citation omitted).

12

While the remaining time entries show work that is reasonably attributable to a fraud upon the Court, it is difficult to ascertain how much of the work should be allocated to Count 3 (fraud upon the Court) and to Count 4 (New York Judiciary Section 487). The same underlying "facts" supported the efforts to recover fees for Counts 3 and 4. The Court denied the Default Judgment Motion to recover fees as to Count 4 (treble damages under the state statute, New York Judiciary Law Section 487) because the Court rejected application of the state statute in a federal court proceeding. *See Reeves*, 2023 WL 8607128, at *7. Therefore, the attorney time spent developing the Section 487 legal theory must be disallowed, while the time spent developing the common facts supporting Counts 3 and 4 is allowed.[11]

As previously stated, PCLLP failed to apportion their time entries on the Invoices, and further complicated the Court's determination by engaging in block billing. The Court is often faced with the task of reviewing fee applications in bankruptcy cases, as all estate professionals are required to obtain Court approval for reimbursement of compensable fees and expenses. A common accepted method in bankruptcy court for disentangling block billing is to apply a percentage reduction in getting to approved fees. Here, the Court concludes that a 50% reduction in fees is appropriate to account for PCLLP's block billing and failure to apportion time.[12] *See Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming reduction in lodestar calculation by 15% due to block billing of 40-50% of time entries); *see also HTV Indus.*, 317 F. Supp. 3d at 725 (adopting Report and Recommendation reducing overall award by 25% due to block billing and counsel's failure to apportion time) (citing cases);

---

[11] Here, the Court considers the time and labor required to correct the effects of the fraud on the Court (*Johnson* factor one). Direct application of the other *Johnson* factors is not necessary to the Court's "hours reasonably expended" analysis.

[12] The 50% reduction in fees also accounts for block-billed entries that may relate to Counts 1 and 2. These entries are few.

*Marisol A.*, 111 F. Supp. 2d at 401 (reducing overall award by 15%, in part due to work on another matter) (citing cases).

3. Karl's Expenses

Finally, Karl seeks an award of expenses in the total amount of $2,520.95 for research, copies, messenger service, and fees. (Levy Declaration ¶ 9.) While these types of litigation costs are ordinarily recoverable, the expense entries likewise fail to reflect any apportionment between Counts 3 and 4 (or other work performed). *See HTV Indus.*, 317 F. Supp. 3d at 726. The Court will likewise reduce the award of reasonable costs by 50%.

IV. **CONCLUSION**

Accordingly, the Court finds the following fees and expenses are reasonable and awards damages to Karl as follows:

| TOTAL FEES REQUESTED | $95,028.36 |
|---|---|
| Reduction for Extraneous Entries | ($6,165.90) |
| Reduction for Block-Billed Entries (50%) | ($44,431.23) |
| **TOTAL FEES AWARDED** | **$44,431.23** |

| TOTAL EXPENSES REQUESTED | $2,520.95 |
|---|---|
| Reduction (50%) | $1,260.48 |
| **TOTAL EXPENSES AWARDED** | **$1,260.47** |

Thus, the Court finds and concludes that Douglass shall pay to Karl **$45,691.70** as damages for Douglass' fraud on the Court.

FED. R. BANKR. P. 7054 applies FED R. CIV. P. 54(a)–(c) in adversary proceedings. Because the Complaint includes multiple claims against Julianne and Douglass, the Court must

14

apply FED. R. CIV. P. 54(b) to determine whether the Court may order the entry of a final judgment against Douglass.  Pursuant to this rule, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  FED R. CIV. P. 54(b).  Here, the *Reeves* Opinion and this Inquest have resolved all claims against Douglass.  The remaining claims against Julianne (Counts 1, 2 and 3) may never have to be adjudicated, and in any event will have to await a resolution by the matrimonial court of numerous issues concerning domestic support obligations.

Therefore, the Court expressly determines that there is no just reason for delay in entering a final judgment against Douglass in the amount of **$45,691.70**, payable to Karl.  As indicated in n.5, *supra*, a separate order will be entered after the Inquest transcript is completed imposing sanctions against Douglass in the amount of $1,000 payable to the Clerk of the United States Bankruptcy Court for the Southern District of New York.

Plaintiff's counsel is directed to prepare and submit to the Court a judgment consistent with this Opinion.

**IT IS SO ORDERED.**

Dated:   April 8, 2024
         New York, New York

                                         *Martin Glenn*
                                         MARTIN GLENN
                                         Chief United States Bankruptcy Judge

15